Argued April 1, reversed July 1; rehearing denied September 4, 1930

# CITY OF DALLAS *v.* GATES
## (289 P. 497)

*W. M. Cake* and *Nicholas Jaureguy* of Portland (Cake & Cake, L. A. Liljeqvist, Jaureguy and Tooze of Portland, on brief) for appellant.

*E. B. Tongue* of Hillsboro and *Lawrence T. Harris* of Eugene (Harris, Smith & Bryson of Eugene, on brief) for respondent.

RAND, J. On May 28, 1903, the city of Dallas entered into an ordinance contract with the defendant, H. V. Gates, for the construction by him for the city of a system of waterworks for supplying water to said city and its inhabitants. By said contract it was agreed that the defendant should construct the plant for the city at his own cost and expense in consideration of the city's advancing to him the sum of $12,000 and furnishing the necessary right of ways, water rights and reservoir sites, and leasing said plant to him, his successors and assigns, at a rental of $1 per year for the period of not less than 20 years, and until the city should avail itself of the option reserved in the contract of taking over the plant and purchasing defendant's interest therein. It was further agreed that, during the term of the lease, the defendant, his successors and assigns, should have the right to charge and collect from the consumers the rates specified in the contract, and that the defendant should at all times maintain and operate said system and, from time to time, make such extension thereof as should be necessary to supply the inhabitants of the city with water. Pursuant to said contract, the city advanced to defendant said sum of $12,000, furnished said right of ways, water rights and reservoir sites, and in all things complied with its said contract, and the defendant constructed said plant and has since operated the same and has charged and received the rates prescribed by the ordinance for said water. The ordinance contract further provided:

"At the expiration of 20 years from the date of the passage of this ordinance, or at the end of each suc-

ceeding period of five years thereafter, optional with the city, the value of the water plant at that time shall be determined by the parties hereto, but if they can not agree they shall determine its value by arbitration. Each party shall select a qualified, disinterested, nonresident person to act as arbitrator; and if they can not agree, they, the said arbitrators, shall select a third, and the decision of said arbitrators or a majority of them shall be final and shall be binding upon both parties to this contract. In determining or ascertaining the value of said water plant, whether by arbitration or otherwise, there shall not be considered or included any of the property acquired by the city under the provisions of section 7 of this ordinance, or any improvement made by the city after the test of said waterworks plant and its acceptance by the city. When such value is thus found, the amount so found, less the $12,000 already paid as herein provided for, shall be paid to the contractor, as a final consideration for additions, extensions and repairs made during the construction of the plant and the use of the same by the contractor. Until such arbitrament is made and the amount determined paid over to the contractor, the use and lease of the plant shall be extended and continue unmolested according to the provisions hereinbefore made and provided."

At the expiration of the period of 25 years from the date of the passage of the ordinance, the city gave notice to the defendant that it would exercise the option reserved to it under the contract of taking over the plant and would pay to defendant the value thereof less said sum of $12,000, in accordance with the terms of the contract. The parties failed to agree upon the price to be paid to defendant. The city contended that the value of the plant was the sum of $78,000, while the defendant contended that it was worth the sum of $159,000, and, being unable to agree upon the price to be paid, the city, in accordance with the terms of the

contract, selected one J. C. Stevens, a duly qualified person, to act as arbitrator and notified defendant of said appointment. The defendant, however, in violation of said contract, refused to appoint an arbitrator and notified the city of such refusal; thereupon, the city filed its complaint in which it set forth the facts that have been recited and prayed for the specific performance of the contract. The court below sustained a general demurrer to the complaint and dismissed the suit, from which the city has appealed.

■ It is alleged in the complaint that the city is ready, able and willing to comply with the contract upon its part and to take over the plant and pay defendant the price thereof, in accordance with the terms of the contract. It appears, however, from the allegations of the complaint that the city does not have sufficient money on hand to pay the price which, under its own valuation of the plant, the city will be required to pay, and that, under existing charter provisions, the city has no authority to borrow the amount; that, in order to raise the money, it will be necessary for the legal voters of the city to amend the charter and authorize the issuance of bonds. This, defendant contends, is not sufficient to entitle plaintiff to a specific performance of the contract. Defendant contends that, before he can be compelled to incur the expense of having the property appraised and its value determined, the city must either have sufficient money on hand to pay whatever price may be fixed or have authority under its charter to issue bonds for the amount and have the issuance of the bonds authorized by the legal voters of the city and that, since the city does not have the money on hand, in the absence of such power and authority,

the city is not entitled to the relief of specific performance. This objection is not tenable upon two grounds at least.

In *Bristol v. Bristol & Warren Waterworks*, 25 R. I. 189 (34 Atl. 359, 32 L. R. A. 740), it was held, in a suit brought to require the defendant to perfom its contract to sell the waterworks to the town, that the objection that the town did not have power to purchase the waterworks could not be made by the owner of the works in order to defeat its contract with the town for the sale thereof. The facts in that case were largely similar to those involved here and, in disposing of the objection to the want of power in the town, the court said:

"As to the objection that the bill contains no averment that the complainant has the legal power to raise the amount of the price to be fixed, we think it clear that no such averment is necessary. The contract provides that the town may purchase; and the respondent can not be permitted to set up, as an excuse for its refusal to carry out said contract, that the town has not the power to purchase. It cannot treat a part thereof as binding, and reject the rest. In short, having entered into said contract, the respondent is estopped from denying that the town had authority to make the same. See Herman, Estoppel, §§ 749, 764, 800, and cases cited. Moreover, the mere fixing of the price to be paid for said waterworks will not divest the respondent of its property therein, or in any way prejudice its rights in connection therewith. It will simply be a step in the direction of carrying out the contract of purchase. But not until the price which shall be fixed shall have been paid by the complainant will the property rights of the respective parties be other or different from what they now are."

We think that the doctrine announced by the court in that case is applicable here.

Another reason why the objection should not be maintained. In *Farmington Village Corp. v. Farmington Water Co.*, 93 Me. 192 (44 Atl. 609), it was contended as here that the city must first provide the money and bind itself to take over the plant before compelling the defendant to go to the large and unnecessary expense of appraising the plant and that, until the money was so provided, the defendant could not be required to perform the contract by appointing an appraiser. In that case the court held:

"* * * The question raised is whether, by the terms of the contract, the village must bind itself to purchase at the appraisal before obtaining an appraisal, or may obtain an appraisal, and then elect whether to purchase at the sum fixed.

"Various arguments of more or less cogency have been advanced upon either side, but the last clause of article 10 seems to us decisive.

"It is first provided in the article that the village corporation 'shall have the right to purchase the said company's entire works and rights * * * at an appraisal to be fixed by three disinterested men, one to be selected by said corporation, one by the said company, and the third by the two so selected.' This is all the language as to the rights and obligations of the parties before the appraisal. Had the parties stopped there, this language alone might indicate perhaps that the village corporation must elect and bind itself to purchase at the appraisal, as was held in *Montgomery Gas Light Co. v. City Council of Montgomery*, 87 Ala. 245 (4 L. R. A. 616), by the defendant. The parties, however, were not content with this language. They did not leave to inference from it the rights and obligations of the parties after the appraisal. They proceeded to expresly describe them by the following additional language, 'and said appraisal shall be the sum at which the said corporation shall have the right to buy said works and rights and for which the said company agree to sell said corporation, the works and

rights as aforesaid.' The antithesis is conspicuous and we must assume that it was designed. The water company clearly and expressly yielded an agreement to sell at the appraisal. The village corporation did not even by inference yield an agreement to buy at the appraisal. It expressly retained however 'the right to buy.' This option of purchase was to be exercised after the appraisal. There was no such clause or language in the contract construed by the Alabama court in *Montgomery Gas Light Co. v. City Council of Montgomery,* supra, cited by the water company. The water company must at the request of the village corporation co-operate in an appraisal. After such appraisal the village corporation may or not, as it deems best, exercise its 'right to buy.' Such was the express contract of the parties.''

■■ Defendant also relies upon the principle of law that, where two parties enter into a simple agreement or contract for the sale of land or other property at a price to be fixed by arbitrators to be appointed by the parties and one of the parties refuses to appoint an arbitrator, the court cannot, upon the application of the other party, either fix a price itself or appoint arbitrators, for the reason that, the contract being simply for a sale at a price to be fixed in a certain manner, the parties cannot be compelled either to sell or to buy at a price not so fixed. Such is the English doctrine: *Milnes v. Gery,* 14 Ves. Jr. 400; *Wilks v. Davis,* 3 Mer. 507; *Vickers v. Vickers,* L. R. 4 Eq. 529. The same rule has been followed in this country when there have been no circumstances to distinguish the case from *Milnes v. Gery.* See Pom. Spec. Perf. Cont., § 150; *Bristol v. Bristol & Warren Waterworks, supra.* Under this rule, an agreement to sell at a price to be fixed by arbitrators or valuers will not be specifically enforced if the mode of fixing the price is an essential part of the contract. But where

the manner of determining the price is a matter of form and not of substance, a different rule applies. Where, in a contract of sale at a price to be fixed by appraisers chosen by the parties, the stipulation for the valuers is not a condition nor the essence of the agreement, but is subsidiary or auxiliary to its main purpose and scope, and the parties may not be left or placed in statu quo by a refusal to enforce the contract, a court of equity may determine the price itself, by its master or by appraisers of its own selection, and may enforce specific performance of the agreement of sale. But, where the stipulation for the appraisers is a condition or the essence of the contract of sale, and a refusal to enforce it will leave the parties in their original situation when the agreement was made, a court of equity will not specifically enforce it: *Castle Creek Water Co. v. City of Aspen,* 146 Fed. 8 (8 Ann. Cas. 660), and cases cited.

■ In the instant case the mode of fixing the price by arbitrators to be appointed by the parties, or, upon their inability to agree, the appointment of a third person, was not a condition nor the essence of the agreement, but was subsidiary and auxiliary to its main purpose and scope. It would work a gross injustice upon the city if, at the expiration of the period of 25 years from the date of the passage of the ordinance and after the defendant had been for that length of time receiving the substantial benefits of his contract at a nominal rental of $1 per year, upon the city's attempt to exercise the option reserved to it in its contract with defendant, defendant, by refusing to appoint an arbitrator, could prevent the city from ever coming into posession of the plant. The defendant expressly contracted that he would appoint an ap-

praiser. To permit him to violate his contract and to continue indefinitely in the possession of this property without paying anything of value to the city would work a gross injustice and hardship upon the city and would permit the defendant to profit from his own wrong. For the court to determine the price at which this property may be transferred to the city can work no hardship upon the defendant for the contract expressly provides that "until such arbitrament is made and the amount determined paid over to the contractor, the use and lease of the plant shall be extended and continue unmolested according to the provisions hereinbefore made and provided." Hence, until the money is actually paid to the defendant, his possession and enjoyment of the plant will remain as before.

■■ The contention that the promises sought to be enforced by a decree for specific performance cannot be enforced because of a lack of mutuality cannot be sustained. In support of this contention, defendant cites *House v. Jackson,* 24 Or. 89 (32 P. 1027), and numerous other decisions of this court in which the doctrine of mutuality has been variously stated. The rule announced in *House v. Jackson,* in which the court said that, as a general rule, to entitle a person to specific performance of a contract, there must have been at the time of entering into the agreement a mutuality, both of obligation and remedy, and the party not bound cannot enforce the contract, may have been a correct principle of law as applied to the particular facts of that case, but it is a rule which has so many exceptions as to be of but little if any value. The rule generally accepted by the authorities is as follows:

"Equity will not compel specific performance by a defendant, if after performance the common-law

remedy of damages would be his sole security for the performance of the plaintiff's side of the contract.''

It is also stated that:

''The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part.''

The author says, in 5 Pomeroy's Equity Jurisprudence (2d Ed.), § 2191 (§ 769):

''This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality. So far as there is a principle of mutuality, it is a mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made.''

See also 3 Lewiston on Contracts, §§ 1433-1443, and 2 Schofield, Constitutional Law and Equity, p. 775.

For these reasons, the decree of the court below will be reversed and the cause will be remanded for such further proceedings as are not inconsistent herewith.

BELT and McBRIDE, JJ., did not participate in this opinion.