Argued December 3, reversed with directions December 19, 1952; petition for rehearing denied February 4, 1953

# PERCY *v.* MILLER ET AL.

251 P. 2d 463

*Norman K. Winslow,* of Salem, argued the cause for appellants. With him on the brief was W. C. Winslow, of Salem.

*Stuart W. Hill* argued the cause for respondent. On the brief were Kerr & Hill and W. G. Keller, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit for the specific performance of a written contract for the exchange of lands, brought by R. G. Percy, as plaintiff, against Floyd G. Miller, Louise M. Miller, and Evelyn Miller, as defendants.

A decree was entered in favor of plaintiff. Defendants Floyd G. Miller and Louise M. Miller appeal.

On and prior to October 10, 1948, plaintiff R. G. Percy and Mary S. Percy, his wife, and Richard G. Percy and Mae Francis Percy, his wife, were the owners and in possession of 1,040 acres of land situate in Klickitat county, state of Washington.

On and prior to October 10, 1948, defendant Floyd G. Miller was the owner and in possession of 205.35 acres of land situate in Lane county, state of Oregon.

On October 10, 1948, in Lane county, Oregon, the plaintiff and defendant Floyd G. Miller entered into the following agreement in writing:

"This Agreement made this 10th day of October 1948 by and between Floyd Miller, hereafter known as the Party of the First Part and R. G. Percy, hereafter known as the Party of the Second Part, to wit as follows:

"The party of the first part and the party of the second part hereby agree to the exchange of ranches hereinafter described:

"The property now owned by the Party of the First Part is located in Lane County, State of Oregon in Township 18, [South Range] 2 West, of the Willamette Meridian and known as the Floyd Miller Ranch and consisting of 205 acres. Full legal description to be included.

"The property of the Second Part is described as follows:

In the County of Klickitat, State of Washington
The SE ¼ of S4, T5, North, R11 East, W. M.
Also
The SW ¼ of S29
The SE ¼ of S30
The NE ¼ of S31 and
The W ½ and S ½ of the NE ¼ of S32
All in T6north, R12east, W. M.

"The parties of the First Part and Party of the Second Part agree to the exchange of the above described properties as follows:

"The Party of the First Part agrees to deliver a good and sufficient deed to his above described property with a Title Insurance policy from a reliable Company insuring a marketable title at his expense to the Party of the Second part, subject to an eight thousand dollar ($8000) mortgage now held against the property by the Travelers Insurance Co.

"The Party of the Second Part agrees to deliver a good and sufficient Deed to his above described property with Title insurance policy from a reliable company insuring a marketable title at his expense to the Party of the First Part, subject to a mortgage now held against the property by C. C. Mitchell of Tiernan, Oregon in the ammount [sic] of Thirty seven thousand five hundred dollars ($37500). The Party of the Second part further agrees to make the payment of fifteen hundred dollars and interest due December 1, 1948, thus reducing the original mortgage by that ammount [sic].

"The Party of the First Part agrees to pay B. R. Gainer of the Gainer Realty Company of Portland, Oregon a commission of 3% on a sale Price of $45,000 upon completion of this deal and the Party of the Second Part agrees to pay B. R. Gainer a commission of 3% on the sale price of $73500 upon the completion of this deal.

"This agreement is made in triplicate and is binding upon the heirs, executors and administrators of the respective parties hereto.

   "[Sgd.] Floyd Miller
     Party of the first Part.
   "[Sgd.] R. G. Percy
     Party of the second Part.

"Witness: [Sgd.] B. R. Gainer."

The foregoing agreement was prepared by the plaintiff and was executed by plaintiff and defendant Floyd Miller in triplicate. B. R. Gainer, a real estate broker and the agent for plaintiff in the transaction, signed as a witness. Percy and Miller each retained a copy of the contract, the remaining copy being delivered to Gainer. It is this agreement which plaintiff seeks to have specifically performed in this suit.

At the time this agreement was entered into, defendant Floyd G. Miller was unmarried. He and defendant Louise Miller had been divorced in the late summer of 1948, but on October 18, 1948, they were remarried. Defendant Evelyn Miller is the minor daughter of defendant Floyd G. Miller and in October, 1948, was 16 years of age.

On October 11, 1948, plaintiff and Gainer placed plaintiff's copy of the contract in escrow with Commonwealth, Inc., of Portland, Oregon, together with a title policy covering the lands owned by plaintiff and his family in Klickitat county, Washington. This title policy had been issued when plaintiff purchased the property in June, 1947, for the price of $50,000. A purchase price mortgage in the sum of $37,500 had been executed and delivered by plaintiff and his family as a part of the price they paid for the land.

Plaintiff and Gainer caused to be prepared by Commonwealth, Inc., a letter of instructions for defendant Miller to sign and a warranty deed for Miller to execute, conveying the Lane county farm to plaintiff and the members of his family named above, as grantees. A carbon copy of this deed was also prepared.

On October 12, 1948, plaintiff and Gainer returned to the Miller farm. They had with them the letter of instructions, together with the original and carbon copy of the proposed warranty deed. There was an

extended and rather heated argument between the parties about placing the papers in escrow. Miller was opposed to it. To that time Miller had had opportunity only to make a more or less casual inspection of the Percy lands. Upon the assurance of plaintiff and Gainer that he would be afforded further opportunity to thoroughly inspect the Klickitat county property, and also that the letter of instructions was in keeping with the terms of the written contract, Miller was induced to and did sign the letter of instructions and executed the warranty deed. However, through apparent inadvertance, the carbon copy of the deed was first signed and executed by Miller. The error was immediately discovered, whereupon Miller executed the original deed. Gainer, a notary public, took the acknowledgement. After these instruments were executed, plaintiff and Gainer took possession of all of them and returned to Portland. They deposited these papers with Commonwealth, Inc., including the carbon copy of the deed.

On October 13, 1948, plaintiff deposited with Commonwealth, Inc., a letter of instructions signed by himself. Defendant Miller never saw this letter. We note one material difference between the two letters of instructions. In the Miller letter it is stated that an owner's title policy on the Percy lands in the sum of $37,500 was to be secured. In the Percy letter this amount is set at $25,000.

On October 14, 1948, defendant Miller again inspected the Klickitat county lands. He made discoveries concerning the property which convinced him that plaintiff and Gainer had made material misrepresentations to him about the lands, particularly as to their productivity.

On October 15, 1948, defendant Miller withdrew his original deed from escrow and later destroyed it. This deed was turned over to him by Commonwealth, Inc., upon his statement that he desired to have his wife Louise execute it. He gave Commonwealth, Inc., a receipt for the deed.

On October 15, 1948, plaintiff deposited with Commonwealth, Inc., a warranty deed duly executed by himself, his wife, his son Richard G. Percy, and Mae Francis Percy, conveying to Floyd G. Miller, as grantee, the Klickitat county lands. The grantors covenanted that they were lawfully seized in fee simple of the granted premises free from all encumbrances, save and except the following:

"* * * assessments of drainage District No. 1, Klickitat County, Washington, which the grantee assumes and agrees to pay; mortgage to C. C. Mitchell and Callie Mitchell, his wife, recorded July 22, 1947 in Volume 73 of mortgages, page under auditor's file No. 36673, Records of Klickitat County, Washington, which the grantee assumes and agrees to pay; reservations contained in deed recorded November 28, 1942 in Volume 84 of Deeds, page , under auditor's file No. 20227, Records of Deeds of Klickitat County, Washington; exceptions and reservations contained in deed recorded September 4, 1923 in volume 57 of deeds, pages 167-8, under auditor's file No. 8432, Records of Klickitat County, Washington; matters relating to water and water rights and rights of way for ditches, drainage ditches and public roads * * *."

On October 16, 1948, defendant Floyd G. Miller, then unmarried, executed a deed as grantor, with his minor daughter Evelyn Miller named as grantee, and had it recorded in the deed records for Lane county, conveying his Lane county farm to his said daughter. There

was no consideration for nor delivery of this deed, and it was executed and recorded wholly without the knowledge or consent of the named grantee.

On October 16, 1948, defendant Miller addressed to B. R. Gainer and to Commonwealth, Inc., communications notifying them that he was withdrawing from the transaction because of misrepresentations which he claimed plaintiff and Gainer had made to him respecting the Percy property.

Plaintiff and Gainer went before a Notary Public in Portland on October 18, 1948, and acknowledged their signatures to the contract of October 10. Gainer's copy of the contract was used for the purpose. Plaintiff immediately caused this acknowledged document to be recorded in the public records of Lane county.

The view we take of this case renders unnecessary a detailed discussion of the mass of evidence introduced upon the trial and touching the question of alleged fraud on the part of plaintiff and Gainer. It is sufficient to say that the record establishes quite clearly that plaintiff and Gainer were not entirely aboveboard in their representations to, and in their dealings with, the defendant.

In his prayer for relief in this suit, plaintiff asks not only for specific performance of the contract of October 10, but also for a cancellation of the deed from Miller to his daughter, and for damages.

In their answer to plaintiff's complaint, defendants Floyd G. Miller and Louise Miller, after denying the material allegations thereof, plead five further and separate answers and defenses to this suit as follows: (1) Alleged fraud on the part of plaintiff in certain respects as particularly alleged; (2) that plaintiff does not come into equity with clean hands by reason of the alleged fraud; (3) want of mutuality of contract

in that the contract cannot be specifically enforced against plaintiff; (4) that the complaint does not set forth a cause of suit upon which equitable relief can be granted; and (5) inadequacy of consideration.

Defendants prayed a decree that plaintiff's suit be dismissed; that the contract be declared null and void; that plaintiff, and all persons claiming under, by or through him, be decreed to have no interest in the Lane county property; that plaintiff be ordered to immediately vacate the premises; and for damages.

The evidence discloses that plaintiff has been in possession of the Lane county farm since January, 1949, and that defendants were in possession of the Percy lands from November 25, 1948, to March 1, 1949.

■ An examination of the contract of October 10 shows that plaintiff contracted to convey the Klickitat lands to defendant free of all encumbrances except the $37,500 mortgage thereon. The record conclusively establishes the fact that plaintiff and his associates cannot convey good title to the Klickitat property, subject only to the mortgage indebtedness mentioned. The title of plaintiff and his associates is defective in the following particulars:

1. A reservation in Northern Pacific Railway Company, a corporation, of a railroad right of way in and across the Northeast quarter of Section 31, Township 6 north of range 12 east of the Willamette meridian; together with any vested and accrued water rights of mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by local customs, laws and the decisions of courts; a right of way for ditches or canals constructed by the authority of the United States; and an easement in the public for any public roads heretofore laid out

or established, and now existing over and across any part of the premises.

2. A reservation in J. Neils Lumber Company, a corporation, of all merchantable timber upon the southeast quarter of section 30, Township 6 north of range 12 east of the Willamette meridian, together with the exclusive and perpetual right, power and privilege to enter in, upon and over any part of said land to remove the same in such manner as the said Lumber Company, its successors and assigns, may determine without obligation for damage or to maintain any fences that might be placed thereon, and whatever rights of way the said Lumber Company, its successors and assigns, may deem necessary for railroad, steam, electric, wagon or sleigh roads, and for telegraph and telephone lines, to be used in connection with the business of the Lumber Company, its successors and assigns, together with the right to enter upon said land at any time and remove therefrom any and all rails, wires, poles and any and all parts of said roads and lines, and any and all buildings placed on said premises by said Lumber Company.

3. Assessments of drainage District No. 1, Kilckitat county, Washington.

These are substantial and not minor defects in the title of plaintiff, and no effort has been made to remove them, if indeed that is possible. The deed placed in escrow by plaintiff is made subject to these encumbrances. That deed does not constitute a substantial compliance with plaintiff's obligation under the contract.

■ It is a general rule of equitable jurisprudence that a plaintiff coming into equity for specific performance must show not only that he has a valid, legally enforceable contract, but also that he has complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the

undertaking on the part of the defendant, or that he is ready, able, and willing to perform his obligations under the contract, in their entirety, and to do whatever has been made a condition precedent on his part. 49 Am Jur, Specific Performance, 53 § 40; 5 Pomeroy, Equity Jurisprudence 2d ed, 4972, § 2227.

Literal and exact performance by a plaintiff is not always necessary as a condition to securing specific performance of a contract by defendant. A court of equity may grant specific performance in some circumstances when plaintiff's inability to perform his part of the contract in its entirety relates to some more or less minor matter. But, as before observed, in the case at bar plaintiff is unable to perform with respect to substantial matters.

■ Equity will not compel an unwilling purchaser to accept a doubtful title which will expose him to the expense and hazard of litigation, and much less will it compel him to accept a title that is subject to substantial encumbrances, unless that is his agreement. 5 Pomeroy, Equity Jurisprudence 2d ed, 4963, § 2223.

■ It has frequently been stated by the courts that the contract to be specifically enforced must, as a general rule, be mutual; that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other. This statement is open to so many exceptions that it has little value as an established rule.

In his work on equity jurisprudence, Mr. Pomeroy has the following to say respecting the doctrine of mutuality:

"* * * But in view of the firm place that the doctrine of mutuality has obtained in the courts of equity, it seems well to attempt a restatement that

shall be more free from exceptions. The following forms seem to meet the cases generally. 'Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract.' 'The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part.' This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.

"So far as there is a principle of mutuality, it is a mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made. Equity is entirely willing to grant plaintiff the performance he applies for, but if it finds that in doing so the defendant, without fault, is left in turn to a remedy at law only, it refuses to lend its aid to such an unequal result." 5 Pomeroy, Equity Jurisprudence 2d ed, 4922, § 2191.

We have followed the reasoning of Mr. Pomeroy with respect to the doctrine of mutuality. *Temple Enterprises v. Combs,* 164 Or 133, 154, 100 P2d 613, 128 ALR 856; *City of Dallas v. Gates,* 133 Or 300, 308, 289 P 497.

In *City of Dallas v. Gates,* supra, this court said:
"* * * The rule announced in House v. Jackson, in which the court said that, as a general rule, to entitle a person to specific performance of a contract, there must have been at the time of entering into the agreement a mutuality, both of obligation and remedy, and the party not bound cannot enforce the contract, may have been a correct principle of law as applied to the particular facts of that case, but it is a rule which has so many exceptions as to be of but little if any value. The

rule generally accepted by the authorities is as follows:

> " 'Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract.'

"It is also stated that:

> " 'The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part.'

"The author says, in 5 Pomeroy's Equity Jurisprudence (2d Ed.), § 2191 (§ 769):

> " 'This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality. So far as there is a principle of mutuality, it is a mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made.' "

■ If defendant Miller was compelled to perform the contract involved in this case, his sole remedy against plaintiff for his failure to perform in the manner as called for by the contract would be an action for damages. There is lack of mutuality of remedy in equity.

Wholly apart from the doctrine that one seeking equity must come into court with clean hands, a doctrine that might well be applied in this case to deny relief to plaintiff, we hold that under the facts and circumstances of this case plaintiff is not entitled to a decree of specific performance because of his inability to perform the contract on his part to be performed.

We have given consideration to the claims made by plaintiff concerning the letter of instructions signed by

defendant and addressed and delivered to Commonwealth, Inc., but find no merit therein. These letters of instructions did not amount to an agreement between the parties modifying the original contract. In his complaint plaintiff does not claim a modification of the original agreement, nor does he seek to have specifically enforced any agreement other than the contract executed on October 10, 1948.

■ Because of plaintiff's inability to perform the contract on his part, defendant Miller could not be deemed bound thereby and had a right to ask for the cancellation of it, and his prayer in that respect should have been allowed. The contract under the circumstances is nudum pactum.

In 5 Corbin, Contracts, 770, § 1175, the following rule is stated:

"In the case of a bilateral contract in which the promised performances constitute an agreed exchange of equivalents, one who has himself broken his promise in some material respect cannot get a decree for specific performance. The same is true, even though the plaintiff has not yet committed a breach, if he is no longer able to render substantial performance when it shall become due. The plaintiff's material breach or his prospective inability operate to discharge the other party from his reciprocal duty to the plaintiff. The duty of the defendant in such cases is a dependent and conditional duty, substantial performance by the plaintiff and his continuing prospective ability to render substantial performance in the future being constructive conditions upon which the defendant's duty depends. That the defendant's duty is discharged is shown by the fact that in such cases the law affords no remedy for non-performance; damages will not be awarded and specific performance will not be decreed."

■ In this suit the defendant Evelyn Miller appeared by and through her duly appointed guardian ad litem. Her answer to plaintiff's complaint consisted of a general denial. As a part of its final decree, the trial court decreed as follows:

"VII.

"That the quitclaim deed executed by the defendant Floyd G. Miller on October 16, 1948 and recorded by him on the same date in the office of the County Clerk of Lane County, Oregon, by which the said defendant purported to convey to his daughter, the defendant Evelyn Miller, the property located in Lane County, Oregon, described in Paragraph II of this decree, be and the same hereby is vacated and set aside and held for naught, no consideration having been given by the defendant Evelyn Miller for such conveyance. It is further ordered, adjudged and decreed that the defendant Evelyn Miller has no right, title, interest or equity in the property described in said paragraph."

The defendant Evelyn Miller did not appeal from the decree. In this court neither party has challenged that portion of the decree of the trial court. As to the matters set forth in said paragraph VII of the decree, the decree of the trial court is final.

Except as to the provisions of paragraph VII of the final decree of the trial court, the decree is reversed and this cause is remanded with directions to enter a decree dismissing plaintiff's suit; cancelling, setting aside, and holding for naught the contract of the parties dated October 10, 1948, and also the warranty deed executed by defendant Floyd G. Miller and delivered in escrow to Commonwealth, Inc.; cancelling, setting aside, and holding for naught the quitclaim deed executed by defendant Floyd G. Miller on October 16, 1948, in which Evelyn Miller is named as grantee; ordering

and directing plaintiff to forthwith surrender possession of the Lane county premises to the defendant Floyd G. Miller, and decreeing that plaintiff and the defendant Evelyn Miller, and all persons claiming by, through, or under them, or either of them, have no right, title, interest, or estate in and to the Lane county property, neither party to recover any damages from the other; the trial court to hold a hearing for the purpose of determining the reasonable value of the use and occupancy of the Lane county premises by plaintiff from the month of January, 1949, until possession thereof is surrendered to defendant Floyd G. Miller, also the reasonable value of the use and occupancy of the Klickitat county lands by defendants from November 25, 1948, until March 1, 1949, and crediting plaintiff with the amounts paid by him, if any, upon the mortgage indebtedness and taxes against the Lane county property, and to enter a judgment in favor of the party to whom a balance is found due upon such accounting. Defendants are entitled to costs.