FAIRVIEW VILLAGE DEVELOP-MENT CORP., an Oregon corporation; Fairview Village LLC, an Oregon limited liability corporation;

Stone Park, LLC, an Oregon limited liability corporation; Holt & Haugh, Inc., an Oregon corporation, Plaintiffs—Appellants,

v.

AMBERHILL PROPERTIES, LP, a California limited partnership; Martin Overstreet, Defendants—Appellees.

No. 02–35423.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2004.

Decided May 11, 2004.

Christopher C.S. Blattner, Esq., Motschenbacher & Blattner LLP, Barbee B. Lyon, Esq., Tonkon, Torp, Galen, Marmaduke & Booth, Portland, OR, for Plaintiffs–Appellants.

Edwin C. Perry, Esq., Tonkon, Torp, Galen, Marmaduke & Booth, Portland, OR, Barbee B. Lyon, Esq., Tonkon Torp LLP, Portland, OR, for Defendants–Appellees.

Before: REINHARDT, SILVERMAN, and CLIFTON, Circuit Judges.

## MEMORANDUM [*]

Plaintiffs Fairview Village Development Corporation, Fairview Village, LLC, Stone Park, LLC, and Holt & Haugh, Inc., appeal from the district court's dismissal of their claims for rescission or termination of the "Restructuring Agreement" that obligated Plaintiffs to purchase four separate parcels of property from Defendants Amberhill Properties and Martin V. Overstreet. Plaintiffs also appeal from the district court's grant of specific performance in favor of Defendants, and the alternative remedy of equitable subordination of Plaintiffs' interest in two promissory notes secured by trust deeds to Defendants' ownership interest in the property involved in the transaction. As the parties are familiar with the facts, procedural history, and arguments, we will not recount them here. We affirm.

The district court did not err in concluding that Plaintiffs' termination and rescission claims were barred by equitable estoppel. "[E]stoppel is available to a par-

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ty to a contract that was led to rely upon a perceived waiver of a contract provision." *Bennett v. Farmers Ins. Co. of Oregon,* 332 Or. 138, 26 P.3d 785, 798 (2001). The party asserting estoppel must show that it justifiably relied to its detriment on the assumed waiver. *Mitchell v. Pac. First Bank,* 130 Or.App. 65, 880 P.2d 490, 497 n. 7 (1994). It is immaterial whether Defendants, by not seeking an urgent reconveyance that would remove Exception 14, are viewed as having changed their position or as having continued a course of conduct already begun. *See Schmeck v. Bogatay,* 259 Or. 188, 485 P.2d 1095, 1099 (1971) (noting that "there may be an estoppel by consent or acquiescence, despite the fact that there has been no change of position by the party claiming the estoppel, where the conduct of the other party has been such as to mislead the party claiming the estoppel to continue a course of conduct already begun"). It is undisputed that after the June 30 conversation between Overstreet and Haugh, Overstreet took no further steps to remedy the problem because Haugh stated that it would not affect the transaction. Whether Overstreet's inaction is viewed as a change of position or as a continuation of conduct, the district court did not err in concluding that Overstreet justifiably relied on Haugh's statements. Nor did the district court err in concluding that such reliance was detrimental. As Plaintiffs concede, a West Coast Bank representative stated that he "could have called one or two more individuals in Salem at the loan administration level," and then contacted the escrow agent.

■ The district court did not abuse its discretion by awarding specific performance to Defendants. Oregon courts will generally award specific performance for breach of a land sale contract when the party seeking specific performance has a valid, legally enforceable contract and is "ready, able, and willing to perform his obligations under the contract." *Percy v. Miller,* 197 Or. 230, 251 P.2d 463, 468 (1952). Though Defendants were technically in breach of the time-essence provision, "[l]iteral and exact performance by a [party] is not always necessary as a condition to securing specific performance of a contract" under Oregon law. *Id.* A court may award specific performance on an equitable basis. *See Albachten v. Miller,* 216 Or. 379, 339 P.2d 427, 430 (1959) ("Equity distinguishes between those terms and stipulations which are of the essence of a contract, and those which are not, and does not permit the defendant to set up a breach of the latter as a complete bar to all relief, or a sufficient reason for wholly refusing to execute the agreement" (quotation marks and citation omitted)). Whether by intention or accident, Plaintiffs set up a breach and then refused to execute the agreement as a result of that breach. By the time Plaintiffs brought suit, Defendants were "ready, able, and willing" to perform and there were no remaining impediments to giving each party what it was contractually owed.

■ The district court did not abuse its discretion in awarding the alternative remedy of equitable subordination. Oregon courts recognize a doctrine of "equitable subrogation" that closely approximates the remedy supplied by the district court. Equitable subrogation is intended to do "complete and perfect justice between the parties without regard to form" where a creditor has lost his priority position due to another party's inequitable conduct. *Maine Bonding & Cas. Co. v. Centennial Ins. Co.,* 298 Or. 514, 693 P.2d 1296, 1301 (1985) (quotation marks and citation omitted). The district court's equitable subordination remedy essentially restores Defendants to the position they would have

occupied had Plaintiffs performed their contractual obligations. Plaintiffs were obligated to obtain Centennial Bank's agreement to subordinate its interest in Comm 2 in order to remove Exceptions 11 and 13 from the title before the closing date. Plaintiffs made no effort to obtain the subordination of Centennial's interest. By not completing the Comm 2 transaction, Plaintiffs avoided repaying a substantial loan. Equitable subordination avoids that result and does "complete and perfect justice" between the parties.

The district court's remedy was also equitable with respect to Centennial Bank. The deposition testimony of Centennial's senior vice president establishes that Centennial had notice of Plaintiffs' obligation to subordinate its promissory notes before the closing date, yet nonetheless failed to secure its interest. *Cf. Lewis v. Investors Leased Group II*, 118 Or.App. 361, 848 P.2d 113, 115–16 (1993) (holding subrogation appropriate where junior interest holder has "record notice of facts that could lead to the disclosure of the fraud upon the holder of the senior interest"). Centennial, aware of the general relationship between Defendants and Plaintiffs, had inquiry notice of Defendants' ownership interest when it assumed Plaintiffs' interest in the promissory notes and had actual notice in early June 2000 of the Restructuring Agreement. By contrast, Defendants apparently did not learn of the assignment of its notes to Centennial until receiving the title report on June 29. Additionally, the potential burden placed on Centennial as a result of the district court's decision does not appear to be so onerous as to compel a conclusion that the district court abused its discretion in granting equitable relief. Thus, the balance of equities supports the district court's decision to give Defendants' interest in Comm 2 priority over Centennial's interest.

The district court did not abuse its discretion in awarding attorney fees and litigation costs to Defendants. Neither the District of Oregon local rules nor Federal Rule of Civil Procedure 16 supports Plaintiffs' novel theory that a party abandons its claim for attorney fees by failing to include it in the pretrial order. To the extent that the omission of attorney fees in the pretrial order supports an inference that the parties had mutually abandoned their claims for attorney fees, that inference is rebutted by the declaration of Defendants' counsel, which makes repeated references to negotiations with respect to attorney fees that occurred both before and after the pretrial order was lodged.

AFFIRMED