Argued July 14, affirmed as modified July 29, 1960

# DELP *v.* SCHIEL

354 P. 2d 299

*McDannel Brown,* Portland, argued the cause and filed briefs for appellant.

*William K. Shepherd,* Portland, argued the cause for respondent. With him on the brief were G. A. Heikkila and E. Earl Feike, Portland.

Before McAllister, Chief Justice, and Warner, O'Connell, Goodwin and Millard, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by defendant, Clifford T. Schiel, from a decree entered in the circuit court of Multnomah county in a proceeding wherein two suits were consolidated for purposes of trial and decree. These suits had to do with the division of property which had accrued to plaintiff and this defendant during a time when they were married and which it is claimed was to have been divided in accordance with a written agreement entered into by them at or about the time of their divorce. It appearing that an accounting would be necessary, the trial court, anterior to the trial, appointed attorney Robert Clapperton, Esq., as referee in each case and referred the trial of the issues of fact framed by pleadings to the referee who was ordered to "try said issues and report his findings of fact, conclusions of law and judgment and decree" to the court in the "manner provided by law." After the trial had commenced and in each cause the parties, through their respective counsel, acknowledged and in writing stipulated that they had consented and did consent to the trial of the issues before the referee as provided by the court's order. In accordance with the court's order a trial was had before the referee who thereafter filed his report containing findings of fact and conclusions of law containing suggested forms of relief and thereafter the trial court entered the decree in question. While there were other corporate defendants, we shall, when speaking of the defendant, be referring to the appellant.

■ Defendant first contends the court erred in

adopting the report of the referee because he was not qualified to serve in that capacity. First he contends that the order of reference could not be made except in compliance with ORS 17.705(2), which requires the consent of both parties in an equity proceeding. Defendant is not in a position to raise this issue. In each case, through his counsel, he stipulated that he had consented and did consent to trial by referee and thereby waived any objection that he could have made.

Defendant further states that the referee was disqualified because of failure to take an oath before entering into his duties. The record does not disclose that such an oath was taken but other than that it does not disclose that an oath was not taken. Defendant's counsel in his brief states that it was so discovered after the trial. We find nothing in the record to this effect other than as stated. It might be well argued that under such circumstances there is a presumption that official duty is regularly performed and, therefore, since the record is silent, it will be presumed that such an oath was taken. See *Appel v. Fleuchaus,* 8 NJ Misc 501, 151 A 97; *Logan v. Brown,* 20 Okla 334, 95 P 441, 20 LRA NS 298. In any event, an oath is not required of a referee in the absence of statutory requirement. *Meyer v. Eichler,* 92 Or 1, 4, 179 P 659. We find no such statutory requirement in this state. Nevertheless, defendant says that such is required by Title 4, § 101, USCA, wherein every judicial officer of a state is required to take an oath before entering upon his duties. But generally a referee is not a judicial officer. *Underwood v. McDuffee,* 15 Mich 361, 365, 93 Am Dec 194. It is not the referee but the court who exercises judicial power in a constitutional sense when it grants judgment or decree based upon the facts found by the referee. In

any event, failure by a referee to take an oath is a mere irregularity which is waived by the parties proceeding to trial without objection on that ground. *Newcomb v. Wood,* 97 US 581, 24 L ed 1085; *Logan v. Brown,* supra. We do not find error in this assignment.

As his next assignment, defendant contends that the "report of the referee should have been set aside upon defendant's motion on the grounds that the same did not comply with the requirements of a statute." The motion referred to is not set forth as a part of this assignment. The only motion to set aside the referee's report contained within appellant's brief was a motion to set aside that report on the ground that it was invalid because of this failure of the referee to take an oath. We have already disposed of this contention and, hence, we find this assignment without merit. It is noted that defendant in his brief under this assignment attempts to argue some other point not assigned as error. It is not up to this court to rephrase assignments of error.

It is next contended that the trial judge erred in approving and adopting the report of the referee as the basis for his decree without considering the evidence upon which the report was based. The transcript of testimony now before us shows that it was filed as a part of the records of the case on March 26, 1958. The jacket containing the exhibits shows they were filed the same day. The court signed and entered this decree on December 31, 1958. The court, in its decree prior to decision, stated that it had examined the "report of the referee and *all the matters of record,* stipulations, briefs which in narrative form covers all of the evidence [and] exhibits adduced in said trial before said referee." (Emphasis supplied.) Further,

the decree reads that the report of the referee was not only correct as to form but also as to "substance." It is incumbent on the court to reach its conclusions of fact and law from the evidence, uninfluenced by the opinion of the referee, when the court on its own motion enters the order of reference. *Craig v. California Vineyard Co.,* 30 Or 43, 51, 46 P 851; 126 ALR 320 et seq. This rule of law does not, however, prevent the trial court from adopting the report of the referee as its own. *In re Level,* 81 Or 298, 302, 159 P 558. Under the circumstances, we are unable to say that the court failed to examine the evidence. On the other hand, it affirmatively appears that the trial court examined all matters of record which would necessarily include the transcript of testimony and exhibits. We find no merit in this assignment.

The defendant next contends that the court erred in overruling the decree of the divorce court with reference to the effect to be given to a so-called "Sales Agreement" and in disregarding the accounting by the defendant for the proceeds of the sale of some of the joint properties. In reviewing this double-barrelled assignment, we will first consider the legal effect of the "Sales Agreement." In the referee's opinion adopted by the trial court it is stated to be "a sterile and ineffective agreement." This document was signed by both the parties and submitted to the divorce court as a property settlement agreement. The divorce court in its findings of fact, after reciting that such a property settlement was entered into, had this to say:

> "That this contract has been partially carried into effect and that because of this property settlement agreement and the partial performance thereof, it is at this time impossible for this court

to determine the property rights of the parties hereto other than in accord with said contract, and that if this property settlement agreement is not performed to the satisfaction of both parties it will of necessity have to be determined by a separate proceeding."

 There was no reference made to this contract in the conclusions of law. In its decree the divorce court expressly provided: *"That no determination be made at this time in this case relative to the properties owned by the parties hereto at the time of the commencement of this suit* but that the property settlement agreement entered into by the parties hereto subsequent to the commencement of this suit be left in full force and effect to be carried out in accordance with its terms by the parties hereto." (Emphasis supplied.) It thus clearly appears that the divorce court made no determination of property rights, never approved or confirmed the so-called property settlement agreement, and, in effect, said that if there was disagreement, it would have "to be determined by a separate proceeding." While the decree of the divorce court was res judicata as to all matters therein determined that rule may not be invoked as to an issue raised therein but not determined. *Harvey et al. v. Getchell et al.,* 190 Or 205, 215, 225 P2d 391. See cases there cited. In any event, mere approval does not make a proposed property settlement agreement a part of the decree. In such cases, the rights of the parties depend on contract and not the decree. *Hagen v. Hagen,* 193 Or 369, 381, 238 P2d 747. We hold, therefore, that the divorce decree was not res judicata as to the issues raised here.

We now turn to a consideration of the validity of the so-called sales agreement. It appears that plain-

tiff and defendant, to put it mildly, had difficulty in agreeing on the actual details of a division of their property. It was, therefore, contemplated that a corporation bearing the name of defendant, Schiel Investment Company, would be organized, each party owning ½ the stock except one share to each of their attorneys and that the joint properties would be conveyed to the corporation which would liquidate them and divide the proceeds on a 50-50 basis. Such an agreement was drawn up and signed, attorney for defendant signing as an officer of Schiel Investment Company which was not yet organized. We do not regard this last observation as of any importance since the company was organized and did receive some of the proceeds from the sale of the property and, hence, can be said to have ratified the agreement. Regardless of the title, this agreement was not, in fact, a sales agreement but merely the appointment of a corporate agent created by plaintiff and defendant to liquidate and divide their joint properties and, in legal effect, controlled by them to the same extent that they formerly exercised control over their joint properties. To that extent we agree with the trial court that the so-called "Sales Agreement" was ineffective and sterile insofar as a solution to their problems is concerned. We cannot refrain from commenting that at this point it would have been better to have taken a realistic approach to the situation than to have prolonged the agony. As a part of this agreement two exhibits were stated to be attached to it, one being a list of the personal property and the other an attached list of the joint obligations of the parties, which was to be paid by the corporate agent before distribution of the proceeds. Such exhibits were never attached and the evidence indicated they never agreed on the extent

of their personal property holdings or their joint obligations. Defendant offered a list of personalty which was prepared about three years afterward and presented to him by his attorney, but there is insufficient evidence showing that plaintiff ever agreed to it. After reading the entire transcript, we are unable with any degree of certainty to determine just what joint obligations were intended or to determine the exact amount of personal property. In this situation we are in agreement with that portion of the referee's report which reads as follows:

"In the face of this record, can it be said that the 'Sales Agreement' constitutes a legally enforceable contract? Many years ago, in a moment of great clarity, the Oregon Supreme Court, in

*Gaines v. Vandecar,* 59 Or. 187, 193, 115 P. 1122, said:

" 'Every contract must be definite and certain as to the terms to be performed by either party, and, if it is so uncertain and ambiguous that the court is unable to collect from it what the parties intended the court cannot enforce it; and since there is no obligation there is no contract. If the contract in any case is so indefinite as to make it impossible for the court to decide just what it means, and fix exactly the legal liability of the parties, it cannot result in an enforceable contract.'

"In

*Holtz v. Olds,* 84 Or. 567, 164 P. 1184, the Oregon Court held void for an uncertainty a contract containing a provision for the deposit of collateral security because the quantity and quality of such security could not be determined from the contract.

"A case involving facts somewhat similar to those in this case is

*Harris v. Santee River Cyprus Lumber Co.* (R.I.), 72 Atl. 392

wherein the Court ruled that an order for goods which refers for details to an attached list and such list was not attached was void for uncertainty and could not be made the basis of an enforceable contract.

"The wisdom of these rulings is obvious when applied to the present case. In the absence of a specific inventory of the personal property to be received by the purchaser corporation and a list of the joint obligations of the sellers, how could the purchaser corporation comply with its obligations under the contract? Extrinsic evidence might be helpful in determining the exact personal property to be transferred to the corporation by the sellers, but even this would impose on the corporation the task of making a judicial determination of the nature of the title to such property, whether joint or single.

"However, granting that such could be accomplished, the corporation would meet an insurmountable barrier when it attempted to decide which obligations of the sellers were joint and which were personal. Experience has taught us that in cases involving the dissolution of the marital contract the most perplexing problem is the determination of the nature and extent of the existing joint obligations of the married couple.

"In the absence of an agreement between the spouses, it becomes necessary for a judge to consider evidence and make a decision as to which debts are the joint obligations of the couple and which are the personal bills of the individuals. Such judicial power cannot be exercised by a corporation, and it was the attempted exercise of this power by Mr. Schiel, the President of the Schiel Investment Company, which has impeded the solution by the Schiel couple of their financial problems.

"Therefore, in and of itself the so-called 'Sales Agreement' is a sterile and ineffective instrument. Two vital parts were omitted, without which any Court would be helpless to direct its performance."

■ We, therefore, for the same reasons hold that the so-called "Sales Agreement" was so indefinite and uncertain as to be unenforceable, and, therefore, the parties, insofar as the distribution of their property is concerned, are not governed by accounting procedures under this purported agreement. We are unable, therefore, to sustain these assignments.

It does not follow, however, that an accounting and disposition of property is not required. An accounting is requested by the plaintiff. Both parties request such other and further relief as to the court may seem just and equitable. As stated in 32 ALR 1151:

"In most jurisdictions a divorce decree which does not contain an adjudication of property rights of the parties does not operate as an absolute bar to the maintenance of an independent action by either of these parties involving such rights."

See also *Weiss v. Bethel,* 8 Or 522, 526.

■ It is evident that a determination of property rights in this case was requested at some stage in the hearing before the divorce court, since that court felt it necessary to refuse to make such determination. We hold that where the divorce court refuses to make a determination of property rights, they may be determined in a subsequent proceeding. *Green v. Green,* 66 Cal App2d 50, 151 P2d 679, 683, 684; *Smith v. Smith,* 235 Minn 412, 51 NW2d 276, 32 ALR 1135, 1141 to 1143, incl.; *Cunningham v. Lankford* (Tex), 258 SW2d 434; 17 A Am Jur 122, 123, § 940. That the trial court made such a determination in this case is evident. After a review of the record, with one exception hereinafter noted, we cannot say the result was unjust or inequitable. Under the circumstances, it was not error for the court to make an equitable division of

the property despite the unenforceable agreement, and, hence, we cannot sustain the fifth assignment of error.

Since the sixth assignment of error has to do with alleged performance and accounting under the purported agreement, we might well refuse to sustain it on that ground alone. In any event, apart from the contract, we cannot say the court erred in making its determination.

As his last assignment of error, there was included as a part of the decree a personal judgment granted against the defendant, in which there was an item of $3,000 on account of salary received by defendant as an officer of Pacific Motors, which at the time of the divorce was owned jointly by plaintiff and defendant. Both were authorized to draw a salary. Defendant withdrew $3,000. Plaintiff, without her knowledge, was issued a check for $2,500 and that was deposited back in the company account, or returned to it, and, hence, it was of no benefit to the plaintiff. It is our opinion that plaintiff should only have been granted judgment for one-half the amount defendant so received, and the decree and the judgment will be modified accordingly.

We have not attempted to set out all the details of the transactions of plaintiff and defendant with each other and with reference to their properties. With the exception above noted, we cannot say that substantial justice was not accomplished. It follows, therefore, that subject to the modification hereinabove expressed the decree of the trial court is affirmed, with neither party to recover costs and disbursements.