In the Matter of
the Conservatorship/Guardianship of
Hide Naito, an Incapacitated Person.

Midori NAITO,
*Appellant,*

*v.*

Samuel T. NAITO
and Herbert M. Schwab,
Co-conservators for Hide Naito,
*Respondents.*

(8705-91003; CA A62443)

864 P2d 1346

Hollis K. McMilan argued the cause for appellant. With him on the briefs were Lynn R. Nakamoto and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Richard M. Botteri argued the cause for respondents. With him on the brief was Weiss, Jensen, Ellis & Botteri.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Plaintiff appeals from final orders of the probate court in a conservatorship proceeding. ORS 19.010. She challenges the authority of the court, after the protected person dies, to order conservators to retain assets of the estate to pay expenses of administration. She also challenges the court's orders approving a special master's findings and allowing payment of attorney fees. We review *de novo*, ORS 19.125(3), and affirm.

Hide Naito (Hide) was plaintiff's husband and the founder and chairman of the board of directors of Norcrest China Company (Norcrest). In 1987, the court appointed plaintiff as Hide's conservator. She placed his property and jointly held assets into the conservatorship estate. She discovered two stock certificates in Hide's name for 750 shares of Norcrest in a safe deposit box held jointly by Hide and plaintiff. She also found a stock agreement in Hide's name describing 50 voting and 700 non-voting shares of Norcrest stock. She sought a determination from the court as to whether Hide owned the stock, whether Norcrest owed Hide compensation and whether Hide remained a guarantor of any of Norcrest's liabilities.

On October 26, 1987, the probate court appointed a special master, McEwen, to make findings on those issues. McEwen's law firm, Cake, Hardy, Buttler, McEwen & Weiss (Cake, Hardy), represented Norcrest at the time of the relevant stock transactions. Weiss, who is a partner in the firm of the co-conservators' attorney, had been McEwen's partner in Cake, Hardy until he left the firm in 1977. On October 27, 1987, an attorney representing defendant Samuel Naito, Hide's son (son), notified the court and plaintiff's attorney, Tongue, that Weiss and McEwen had been law partners. Tongue responded in writing that he did not believe "the previous partnership * * * will cause any difficulty."

McEwen met with the parties' counsel on October 29, 1987. After reviewing the evidence, he submitted a report to the probate court on January 22, 1988, in which he found that Hide did not own the Norcrest stock, that Norcrest did not owe Hide past compensation and that Hide was no longer responsible for any of Norcrest's liabilities.

On March 16, 1988, plaintiff sent a letter to the court stating that she objected to McEwen's appointment. She claimed that she would not have consented to the appointment had she known of the relationship between Weiss and McEwen, and that she wanted to change legal counsel. She requested a postponement of a hearing set for mid-April, but the court refused. On April 11, 1988, plaintiff again wrote to the court. She apologized, withdrew her earlier letter and said that the same firm would continue to represent her.

In May, 1988, at son's request, the court substituted son for plaintiff as conservator. Plaintiff appealed her removal. In September, 1988, the court appointed Schwab as co-conservator. On August 8, 1989, while plaintiff's appeal was pending, Hide died.[1] We dismissed the appeal as moot. *Naito v. Naito*, 99 Or App 608, 783 P2d 1012 (1989).

Hide's will provided that all of his property should be held in trust during plaintiff's lifetime and used for her benefit. However, Hide held all significant assets, except the family home and adjoining lots, jointly with plaintiff. The conflict between the trust provision and the joint title created a dispute over ownership of Hide's assets. Schwab recommended, and the court ordered, binding arbitration to settle the ownership of assets dispute. The parties appointed an arbitrator, who ruled that all jointly held assets passed to plaintiff on Hide's death by operation of law. The co-conservators and plaintiff agreed to maintain $100,000 of jointly held assets in the conservatorship estate to pay conservatorship expenses.

The co-conservators cashed a $50,000 certificate of deposit from the conservatorship estate and used $25,000 of it to pay attorney fees. In January, 1991, the court ordered the sale of Hide's residence to pay the conservator's attorney fees. In February, 1991, the court ordered the co-conservators to retain the property pending this appeal. The court also ordered all jointly held assets returned to plaintiff, including reimbursement of the $25,000. The court denied plaintiff's petition to terminate the conservatorship.

---

[1] Son was appointed personal representative on August 15, 1989, pursuant to decedent's will.

In two assignments of error, plaintiff argues that the conservatorship terminated at Hide's death and that the court lacked authority to continue it and defendants lacked authority to sell the home and pay attorney fees. She argues that ORS 126.337(1) requires the conservator to "retain the estate for delivery to the personal representative" when the protected person dies. She also relies on our statement in *Naito v. Naito, supra,* 99 Or App at 611, that the "conservatorship was terminated" on Hide's death.

■ Our statement in *Naito* was arguably too broad.[2] A conservatorship may be terminated only by petition and court order. *Crofoot v. Oregon State Bar,* 54 Or App 151, 155 n 3, 634 P2d 284 (1981). If the protected person dies, the conservator's powers and duties are those described in ORS 126.337, including the duty to "retain the estate for delivery to the personal representative of the decedent or other persons entitled thereto." ORS 126.337(1). The conservator remains subject to the court's authority so that the purposes of the conservatorship are fulfilled. The conservator may deliver assets retained under ORS 126.337(1) only pursuant to an order terminating the conservatorship. ORS 126.387(2) provides, as material:

"The order of termination shall direct the conservator to deliver the assets in the possession of the conservator to the protected person or successors:

"(a) Immediately, to the extent that they are not required for payment of expenses of administration and debts incurred by the conservator for the account of the estate of the protected person * * *."

Under the statutory scheme, when the protected person dies, the conservator retains the estate for delivery to the personal representative or other proper person, ORS 126.337(1), and the court orders delivery of the retained assets to the protected person's successors, *except for assets required for estate expenses.* ORS 125.387(2)(a). Assets necessary to pay expenses remain in the conservatorship estate until the expenses are paid. ORS 126.387(2). Those assets

---

[2] We do not modify our holding in *Naito v. Naito, supra,* 99 Or App at 611, that the wife's appeal in that case was moot. She raised no claim about her removal that required resolution after the character of the conservator's powers and duties changed due to Hide's death. ORS 126.337.

remain subject to the conservator's power under ORS 126.313(7) to "dispose of an estate asset including land wherever situated for cash or on credit, at public or private sale * * *." Funds of the estate, including those generated by a sale of estate assets, "may be used to pay reasonable compensation to any * * * attorney * * * for services rendered * * * on behalf of the conservator * * *." ORS 126.263(1). Such payments must be approved by the court. ORS 126.263(2).

■ ■  The court's procedure here follows the statutory scheme. The court ordered that defendants, in accordance with ORS 126.337(1), retain estate property and, pursuant to their authority in ORS 126.313(7), sell the residence to generate funds necessary to compensate their attorneys. ORS 126.263(2). The court has statutory authority to make those orders. The court did not err. Because the conservators' duty to pay expenses of administration is not fulfilled, the court also did not err in denying plaintiff's motion to terminate the conservatorship.

Plaintiff assigns error to the court's order adopting the special master's findings, because the conservatorship had terminated due to Hide's death, and because McEwen had an appearance of bias. We have concluded that the conservatorship survived the death for purposes of paying expenses. We address only the appearance of bias.

■  Plaintiff, through her attorney, waived any claim that McEwen could not serve as a special master free from the appearance of bias. Waiver is the intentional relinquishment of a known right. *Drews v. EBI Companies*, 310 Or 134, 150, 795 P2d 531 (1990); *Grau v. Northwestern Mutual Insurance Co.*, 221 Or 240, 245, 350 P2d 1082 (1960); *Kahl v. Pool*, 47 Or App 43, 48, 613 P2d 1078 (1980). An attorney, acting as the client's agent, may waive the client's objection to a referee or special master. *See Delp v. Schiel*, 223 Or 267, 271, 354 P2d 299 (1960). Plaintiff's attorney assured defendants that McEwen's past involvement with Norcrest and his former association with Weiss would not "cause any difficulty." The trial court concluded that that statement was a waiver that bound plaintiff, and that her correspondence with the court also supported that conclusion. We agree.

■     Plaintiff also argues that, under ORCP 65E(2), McEwen's report was insufficient as a matter of law. ORCP 65E(2) requires the referee to "file a transcript of the proceedings and of the evidence and the original exhibits with the report." ORCP 65E(3) provides that, "[w]ithin 10 days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties." McEwen filed the report with the court on January 22, 1988. He did not file the exhibits and documentary evidence he relied on in making his report. Plaintiff did not timely object to the report. On April 3, 1989, the court ordered plaintiff to show cause why the court should not adopt McEwen's report, and a hearing was held on June 2, 1989. At the hearing, plaintiff objected to McEwen's report because he did not submit the documents required by ORCP 65E(2). On September 22, 1989, the court adopted McEwen's findings. The court found that plaintiff waived her objection. We agree.

■     Finally, plaintiff assigns error to the court's July 31, 1990, and February 5, 1991, orders awarding attorney fees and expenses incurred by defendants. She asserts that the court cannot award attorney fees for work attributable to the arbitration. Defendants were not parties to the arbitration. However, they filed detailed accountings that establish that the attorneys' work supported the purpose of the conservatorship and that the expenses incurred were reasonable. We see no reason to disturb the court's orders.

    Affirmed.