Argued and submitted May 3, reversed and remanded October 9, 1996

## Charles H. HERBURGER,
*Appellant,*

*v.*

## Ruthella HERBURGER,
*Respondent.*

## (93-10291 CV; CA A89884)

925 P2d 103

Timothy J. O'Hanlon argued the cause for appellant. With him on the briefs was Mautz Baum Hostetter & O'Hanlon.

Brian J. MacRitchie argued the cause for respondent. With him on the brief was Merrill, O'Sullivan, MacRitchie, Petersen & Dixon.

Before De Muniz, Presiding Judge, and Leeson and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiff appeals from a summary judgment in which the trial court dismissed his claim for imposition of a constructive trust for two annuities. He argues that the trial court erroneously determined that his claim was precluded by an earlier proceeding involving the final accounting and termination of a conservatorship. We reverse and remand.

In December 1992, a probate court appointed plaintiff and defendant as co-conservators for Harold Herburger. ORS 126.003 *et seq*[1] Plaintiff was Harold's son from his first marriage, and defendant was Harold's second wife.[2] Harold died one month after the conservatorship was established and defendant subsequently withdrew as co-conservator for "personal reasons." Shortly thereafter, on May 24, 1993, plaintiff filed the "First and Final Account of Conservator Charles H. Herburger; Petition for Order Closing Estate and Discharging Co-conservator Charles H. Herburger." The petition included an inventory of "all the property of the conservatorship." The inventory described several bank accounts, all of which Harold had held in joint tenancy with either plaintiff or defendant, real property Harold had held in joint tenancy with defendant, two motor vehicles Harold had held in joint tenancy with defendant, and two annuity policies, one valued at approximately $59,000 and the other valued at approximately $34,000. The inventory did not list the beneficiaries of the two annuity policies. Nevertheless, there is uncontroverted evidence that plaintiff knew at the time of the final accounting that defendant was the designated beneficiary for both policies. The petition requested, *inter alia*, that the court approve the accounting and "discharge of Co-Conservator Charles H. Herburger herein and *distribution of the remaining conservatorship as previously designated by the protected person.*"

Defendant, as an interested person,[3] received notice of the petition, and opportunity to file objections to it.[4] The

---

[1] ORS 126.003 *et seq* has since been repealed by Or Laws 1995, ch 664, § 105.

[2] Harold and defendant were married for 41 years.

[3] ORS 126.003(6) provides:

"(6) 'Interested person' includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against the estate of a ward or protected person which may be affected by the proceedings[.]"

[4] ORS 126.007 provides:

court entered an order approving the accounting, ordering plaintiff, as conservator, "to make the distribution of the remaining estate property as previously designated by the protected person[,]" and discharging plaintiff as conservator "upon completion of the distribution[.]" At no time during the proceedings for the final accounting did plaintiff, either as conservator or in his individual capacity, raise objections to the designation of defendant as beneficiary of the annuities.

Several months after the conservatorship concluded, plaintiff, in his "individual capacity," brought this action against defendant, alleging that his father had originally designated plaintiff as the beneficiary of the two annuity policies and that defendant had exercised "undue influence" over Harold, causing "her name to be placed on the [policies] as the beneficiary and having plaintiff's name stricken therefrom." Plaintiff sought a judgment "[c]reating a constructive trust for the benefit of plaintiff over the funds from the [policies.]" Defendant moved for summary judgment, arguing that plaintiff was barred by the doctrine of "claim preclusion" from bringing his present action, because the issues he raised could have been raised in the final accounting and conservatorship termination proceedings. The trial court agreed and entered judgment for defendant.

On appeal, plaintiff argues that the trial court's "claim preclusion" holding was error because he could not have raised the issue of "undue influence" in the context of the conservatorship's final accounting for two related reasons. First, the nature of conservatorship proceedings renders such a challenge impracticable. Second, the title to the annuity policies passed upon Harold's death and, thus, were no longer part of the conservatorship estate when plaintiff filed the petition for the final accounting.

 In addressing those arguments, we consider the purpose of, and powers available in, a conservatorship. ORS

_____

"(1) Notice, where required by ORS 126.003 to 126.403, 127.005 and 127.015 means information concerning a proceeding, given by mail or by personal service, requiring the person notified to file written objections to the petition or other matter on or before a date specified in the notice, which date shall be not less than 15 days after the mailing or personal service of the notice. A copy of the petition or motion shall accompany the notice."

126.003(9) defines a "protective proceeding" (such as a conservatorship proceeding) and its purpose:

> " 'Protective proceeding' is a proceeding * * * to determine that a person cannot effectively manage or apply the estate of the person to necessary ends, * * * and to secure administration of the estate by a conservator or other appropriate relief."

Thus, a conservatorship involves the management of a protected person's assets. The conservator is given broad powers in that management. *See* ORS 126.313. Additionally, the court is authorized to "exercise all powers over the estate and affairs of the person which the person could exercise if present and not under disability, except the power to make a will." ORS 126.217.[5] Those statutory provisions apply until the conservatorship is terminated.

■■ Two statutes prescribe procedures for terminating the conservatorship upon the protected person's death. ORS 126.337 provides:

> "(1) If a protected person dies, the conservator shall deliver to the court for safekeeping any will of the deceased protected person which may have come into the possession of the conservator, inform the executor or a beneficiary named therein that the conservator has done so, and *retain the estate* for delivery to the personal representative of the decedent or other persons entitled thereto." (Emphasis supplied.)

ORS 126.387 provides:

> "(1) The protected person, the personal representative of the protected person, the conservator or any other interested person may petition the court to terminate the conservatorship. A protected person seeking termination is entitled to the same rights and procedures as in an original proceeding for a protective order.

---

[5] Among the court's powers listed in ORS 126.217 is the power to "change beneficiaries under insurance and annuity policies, only if satisfied, after notice to interested persons * * * that it is in the best interests of the protected person, and that the person either is incapable of consenting or has consented to the proposed exercise of power."

"(2) The court, upon determining after notice and hearing that the minority or disability of the protected person has ceased, may terminate the conservatorship. The order of termination shall direct the conservator to deliver the assets in the possession of the conservator to the protected person or successors:

"(a) Immediately, to the extent that they are not required for payment of expenses of administration and debts incurred by the conservator for the account of the estate of the protected person; and

"(b) Upon entry of an order approving the final account or surcharging the conservator, to the extent of any balance remaining."

Thus, when a protected person dies, the conservator's once broad powers are constricted to delivering the will and retaining the estate until the court's order of termination. Likewise, the court's authority is limited to directing the payment of claims for administration and debts of the conservatorship estate, and *immediately* thereafter ordering the distribution of the assets in the conservator's possession to the successors.

■ ■ Plaintiff argues that the annuity policies were not part of the protected person's estate after his death, because the proceeds to those policies "vested in the defendant" upon Harold's death. Therefore, he argues that he, as conservator, had no control over the annuity policies in the final order. That contention is not entirely correct. ORS 126.387(1)(a) contemplates that even those assets that might not be subject to a probate of a decedent's estate are nonetheless assets that remain within the conservatorship estate until administrative expenses and debts of the conservatorship estate are paid. *See Naito v. Naito*, 125 Or App 231, 864 P2d 1346 (1993), *rev den* 318 Or 582 (1994) (court has authority to order payment of administrative expenses and debts of conservatorship estate from all of the assets in the protected person's estate, including those held in joint tenancy with another person). Nevertheless, the fact that the annuity policies remained in the conservator's possession for such limited purposes did not mean that the conservator held any possessory rights permitting him to alter the distribution of

the policies after the protected person's death. Nor does the court have authority under ORS 126.387 to do so.

■ Here, neither the conservator nor the court had the authority after the protected person's death to change the designated beneficiary on the annuity policies. Consequently, plaintiff's undue influence claim was not barred by the doctrine of claim preclusion. *See Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990) (the doctrine of claim preclusion requires the opportunity to litigate). The trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded for further proceedings.