Argued February 3, affirmed May 26, 1965

# CITY OF HILLSBORO *v.* JAMES & YOST, INC. ET AL
### 402 P. 2d 511

*Michael H. Schmeer,* Portland, argued the cause for appellants. With him on the briefs were John J. Higgins and Black, Kendall, Tremaine, Boothe & Higgins, Portland.

*W. C. Schwenn,* Hillsboro, argued the cause for respondent. With him on the brief was Carrell F. Bradley, Hillsboro.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

DENECKE, J.

Defendant contracted with plaintiff City to furnish and lay concrete pipe for sewer extensions. The City brought an action for damages, contending that the work was done defectively. The jury found for the

City and assessed its damages at $60,000. Defendant appeals.

The first three assignments of error concern evidence which was admitted over defendant contractor's objection.

I

The specifications call for leakage and infiltration tests:

"On completion of a section of sewer between manholes or otherwise the Engineer may require that the ends be bulkheaded and the pipe subjected to a hydrostatic pressure produced by a head of water at a depth of four (4) feet above the bottom invert of the sewer under test at its higher end. This head of water shall be maintained for a period of one hour during which will be presumed that full absorption of the pipe body has taken place and thereafter for a further period of six (6) hours for the actual test of leakage. During this 6-hour period the measured loss shall not exceed the rate given in the following tables:

| "Pipe Size | Allowed Hourly Limit of Leakage |
|---|---|
| 6 Inch | 3 gal. per hundred feet of sewer |
| 8 Inch | 4 gal. per hundred feet of sewer |
| 10 Inch | 5 gal. per hundred feet of sewer |
| 12 Inch | 6 gal. per hundred feet of sewer |
| 15 Inch | 8 gal. per hundred feet of sewer |

"The above listed leakage rates will also be applied to infiltration from ground water. Infiltration in greater amounts than those shown in the table will be cause for rejection of sewer.

"In undertaking the work on this project the Contractor agrees that leakage allowance as above indicated are fair and practicable of attainment and that he guarantees to secure these results."

The contractor objected to testimony of the results of the infiltration tests upon the ground that there was

no showing that at the time of such infiltration tests the level of the water table in the ground was four feet above the pipe. The contractor contends that as the specifications contain a limitation that the leakage rates are based upon a head of four feet of water in the manhole and the leakage rates are applicable to both leakage and infiltration, the results of the infiltration tests are inadmissible unless the ground water level is shown to be four feet above the pipe.

■ The specifications do not state that the infiltration test shall be made with any certain water level. There was no evidence that the pressure exerted by water in the manhole to a height of four feet above the sewer pipe is in any way comparable to that exerted when the ground water level is four feet above the horizontal pipe. The evidence was properly admissible.

## II

The City's supervisor of construction was Mr. Cox, who performed much of the testing, along with the contractor's representative. Cox kept a job diary and testified that upon testing a section on Arrington Road for leakage, he noted in his diary that "the sewer line failed badly." The diary was not offered and there was no testimony of the amount of the leakage. The contractor's motion to strike was denied.

■ It is not necessary to determine if the receipt of this statement was error as its admission was not prejudicial. The contractor admitted that some of the pipe was defective; however, his admission neither excluded nor included the pipe in this section on Arrington Road and, therefore, the testimony of Cox was relevant on the issue of amount of damages. About one month after the tests noted in the job diary, Cox tested this same section and his results, stated in terms

of leakage and infiltration per gallon per hour are in evidence. These show that the section "failed badly."

## III

Part of the contract specifications consisted of 19 pages of blueprints of the plans for the sewer. These were admitted into evidence without objection. The City offered into evidence another set of these plans with notations thereon made by the Assistant City Engineer, Mr. Hathorn. These notations were the leakage and infiltration test results mentioned previously and the observations of Hathorn. For example, page 1 contains the sewer plans for NE Delsey, NE Donelson and NE 9th Avenue. On the section between Manhole No. 1 and Manhole No. 2, Hathorn noted, "Inf. [infiltration] 50; Allow 3," this being the test result and allowance permitted by the specifications. He also noted in this same section, "21' leak"; this notation is placed upon the plan approximately 21 feet, by scale, from the manhole. We presume that the purpose of this exhibit was to connect graphically the test results and the defects observed to the particular sections of the sewer where they were taken or occurred.

█ The contractor objected "on the grounds it is a summary." Defendant on appeal contends that the exhibit is objectionable upon other grounds; however, as these were not brought to the trial court's attention, we will not consider them. The trial court did not err in admitting the exhibit.

█ Defendant is correct that ordinarily an expert's written opinion, like any witness's written testimony, cannot be received in evidence. *Highway Com. v. Superbilt Mfg. Co.*, 204 Or 393, 409, 281 P2d 707

(1955). However, as that opinion states, "summaries of long accounts contained in original books of entry * * * are sometimes admissible."

■ In this case we have something similar to "long accounts." The project involved about 12,500 lineal feet of sewer pipe. Forty-two different sections were tested; observations of the interior of thousands of feet of various sections of the sewer were made by pulling a camera through the sewer and viewing the picture taken on a closed-circuit television screen. The exhibit could have been of substantial assistance to the triers of fact. "Computations of that kind, which enable the trier of facts to find his way around in a labyrinth of figures and papers, serve the same purpose as the needle of a mariner's compass in a storm." *Duncan v. Bartle,* 188 Or 451, 480, 216 P2d 1005 (1950).

## IV

Defendant's principal assignment of error is directed at the trial court's striking of an affirmative defense; instructing the jury upon the same theory followed in striking the affirmative defense; and failing to instruct on the same subject.

The essence of defendant's contention is that the contract did not provide for a blanket guarantee by the contractor against defective materials; the City had the contractual obligation to examine the pipe and when the City accepted the pipe, the contractor was not responsible for any defects which were subsequently found.

The pertinent contract provisions are as follows:

"Whether or not there appears here or elsewhere herein specific reference to guarantees of all items of material, equipment, and workmanship, they nevertheless shall be so guaranteed against mechan-

ical, structural, or other defects for which the Contractor is responsible that may develop or become evident within a period of one year from and after acceptance of the work by the City. * * *

"* * * * *

"The work will be accepted only when it shall have been completed in accordance with these specifications and satisfactory to the Engineer. Partial payments shall in no way be construed as acceptance of any part of the work.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the Engineer shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in the contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable.

"* * * * *

"Pipe shall be standard concrete sewer pipe and shall conform to ASTM Specification C14-59 Extra Strength. * * *

"* * * * *

"Specifications for the jointing of sewer pipe will be rigidly enforced and the inadvertent passing of any defective work by an inspector shall not relieve the Contractor of his responsibility to complete a sewer which will be as watertight as reasonably can be obtained.

"* * * * *

"Before being laid, each pipe shall be examined and accepted by the Engineer or by his authorized assistant who is serving as inspector. Any irregularity, cracking or chipping that will possibly result in a leaking joint shall be cause for rejection.

Rejected pipe shall be marked and removed from the job at no cost to the City."

The admitted defect was that the spigot ends of the pipe were of insufficient diameter and, therefore, did not adequately compress the rubber ring gaskets when fitted into the bell ends of the jointed sections. This defect was not known to either party before the pipe was laid and the backfill was completed. On appeal the contractor contends that the City's inspector should have known of the defect because the error of one-eighth to one-fourth inch in the spigot-end diameter could be found by measurement. However, the contractor in its answer alleged that the defect was latent, and at trial admitted that neither the contractor nor the City's engineers could, in the exercise of reasonable care, have discovered the defect. We consider the defect to be one not discoverable by reasonable inspection, although such an assumption is not essential to our decision.

■ The contract requires the contractor to provide pipe complying with ASTM specifications; this was not done. Contractual provisions concerning who shall inspect, reject or accept the pipe do not necessarily affect this duty of the contractor. Under certain circumstances the acceptance of defective performance of a contract discharges a claim for damages for breach. "However, 'The mere receipt of the defective performance is not in itself sufficient to discharge the claim to damages for the breach. There must be an expression of assent to accept it in satisfaction and as a complete discharge * * * of the obligor's duty * * *.'" *Foster v. Agri-Chem, Inc.,* 235 Or 570, 576-577, 385 P2d 184 (1963), quoting 5 Corbin, Contracts, 984, § 1245.

■ The cases relied upon by the contractor involve a final acceptance of the work by the architect or engineer. In those cases the contract provided that after the work has been completed and the engineer satisfied that the work has been done properly, he shall so certify to the owner and payment to the contractor is in order. This common construction practice has been judicially declared to be an assent to accept the performance, defective or complete, as a total discharge of the contractor's duty. See *Dennis v. Willamina,* 80 Or 486, 498, 157 P 799 (1916); 5 Corbin, supra, at n. 10. There was no final acceptance in this case; final acceptance was refused because of the defective performance of the contract. The failure of the City's inspector to reject the pipe before it was put in the ground cannot be construed as an expression of assent to defective performance, especially since the engineer did not know it was defective. See *Seaside, City of, v. Randles,* 92 Or 650, 666, 180 P 319 (1919). The trial court did not err.

Affirmed.