Argued and submitted March 10,
reversed in part, affirmed in part July 14, 1980

KAHL, et al,
*Appellants,*
*v.*
POOL, et al,
*Respondents.*

(No. 77-9-185, CA 15201)

613 P2d 1078

David Shapiro, Portland, argued the cause for appellants. On the briefs was Virgil Colombo, Portland.

James S. Carskadon, Milwaukie, argued the cause for respondents Dolores Pool and Harvey Pool. With him on the brief was Redman, Carskadon & Knauss, Portland.

No appearance for respondent Mobile Home Country, Inc.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges, and Tongue, Judge Pro Tempore.

GILLETTE, P. J.

### GILLETTE, P. J.

This is a suit in equity to terminate a lease and obtain possession of the leasehold. Plaintiffs also seek a money judgment for past due rents.[1] The trial court found for the defendants and plaintiffs appeal. We reverse in part and affirm in part.

In May, 1972, Lillian Fakoury and defendants Pool entered into a thirteen year agreement for the lease of certain commercial property located in Clackamas County. The lease provides for increasing rent: $350 per month for the first three years, $450 per month for the next five years, and $550 per month thereafter. The lessee also agrees to pay an additional rental equal to the amount the property taxes on the premises exceed $1,200 per year. The lease provides that this additional rent shall be paid monthly.

Lillian Fakoury died in November, 1974. Her daughter, Edna Fakoury, succeeded to her interest in the property. In 1976, George Fakoury, Edna's brother, was appointed conservator for Edna in Oakland, California. In September, 1977, he instituted this suit. In September, 1978, plaintiffs Kahl and Teeny, Edna Fakoury's sisters, were appointed acting conservators and, because of jurisdictional requirements, were substituted as parties plaintiffs.

Plaintiffs claim that defendant Pool[2] owes them $1,030 for base rent due and unpaid as of December 31, 1978, and $1,637 in additional rent as an offset against real property taxes due in the years 1976-77 and 1977-78. They seek to terminate the lease for non-payment of rent and for subleasing the premises

---

[1] Plaintiffs alleged a second cause of action against defendant Mobile Home Country (MHC), seeking a money judgment for the reasonable rental value of the premises. The trial court found for MHC. The appeal as to MHC has been dismissed upon stipulation of parties. In this opinion, "defendant" refers to defendant Harvey Pool. *See also* fn 2, *infra*.

[2] The claim was brought against both Mr. & Mrs. Pool. They were divorced in 1978 and Mr. Pool was awarded the full interest in the lease.

[45]

without consent. Defendant claims payment of all rent due and, alternatively, raises defenses of waiver and estoppel. The trial court concluded that plaintiffs failed to prove by a preponderance of the evidence that the Pools were delinquent in their rental payments and found as a matter of fact that plaintiffs consented to a sublease, which is further described, *infra.*

We turn first to the claim of base rent due. In April, 1976, the Pools, as lessees, subleased the property in question to a company known as RV Western for a period of six months. In November, 1976, Mobile Home Country (MHC) moved onto the property and in March, 1977, entered into a sublease agreement with the Pools. The agreement provided for a rental of $450 per month until May 1, 1980, at which time the rent would be raised to $550 a month. There was no mention of any additional rent for real property taxes, but a sum of $65 was included for taxes in the monthly rental payments to defendant making these payments, in fact, $615 a month.

Initially, MHC made their payments to defendant. Defendant was then to pay the Fakourys. The Fakourys did not always receive the rent when due and attempted to locate Pool. They were unsuccessful in their attempts and, in April or May, 1977, discussed the matter with MHC. The Fakourys and MHC agreed that the rent would be sent directly from MHC to George Fakoury. Thereafter, payments were made in that manner.

Plaintiffs do not specify the months for which they now claim rent is still due. Plaintiff Kahl testified at trial that she was unsure about what the $1,030 figure in the plaintiffs' complaint requested, but she assumed it was for two months' back rent.[3] In,

---

[3] On appeal, plaintiffs claim that Pool owes them rent for five months. During the trial, George Fakoury and plaintiff Kahl testified that a check for $1,545, sent by Pool for three months rent, never cleared the bank. The check marked returned unpaid was introduced into evidence. However, plaintiffs' original claim was for $1,030 only and their complaint was never amended to include the additional $1,545 they now claim is due.

January, 1978, an accounting of the conservatorship of Edna Fakoury took place in Alameda County, California, which showed that from November, 1976, through January, 1978, rental payments, sometimes in sums covering more than one month, were received for 13 months, leaving two months unaccounted for. Both parties admit keeping poor records. Plaintiffs admit receiving twenty checks for $515 a month from MHC for the period of time from May 1, 1977, until November, 1978. These checks were introduced into evidence.[4] Defendant testified that he paid the base rent due up until May, 1977. However, no records or any other evidence of payment were introduced for the six month period of November, 1976, through April, 1977. However, there is some indication that there was two months' rent due.

■■ Payment must be pleaded and proved by the party claiming it. *Pickett v. Pickett,* 274 Or 135, 138, 544 P2d 1042 (1976). In this case, plaintiffs claim rent due for two months. The lease is evidence of the debt owed. Defendant failed to provide any documentary evidence that he paid the rent in question. He relies upon a disputable presumption that former rent or installments of a debt have been paid when a receipt for later rent on installments is introduced. ORS 41.360(10). Rental receipts for the months after the time for which rent is claimed due were produced. However, there was evidence to dispute the presumption: The later receipts were not from defendant Pool but produced by MHC. Pool introduced no evidence of any rental payments on his own behalf. Moreover, the California accounting indicates a delinquency of two months. Plaintiffs established their claim of $1,030 for base rent due.

We turn now to the claim for additional rent due for property taxes for the years 1976-77 and 1977-

---

[4] Plaintiffs have received the full amount of rent due, base rent plus additional rent due for taxes, since November, 1978, but have not accepted these payments; they are being held by plaintiffs' attorney.

78. Plaintiffs introduced into evidence copies of the tax assessments for the property in question. Taxes were $2,165 for the tax year beginning in July, 1976, and $3,431.78 for the following year. This means that the defendant was obligated to pay an additional rent of $965 in 1976-77 and $2,231.78 in 1977-78. Defendant paid $65 a month or $780 a year for taxes for the years in question. Thus, there is a shortage of $185 for 1976-77 and $1,451.78 for 1977-78, for a total of $1,636.78.

Defendant does not claim to have paid the additional rent. Defendant testified that during the first year of the lease, 1972, he paid the property taxes at the end of the tax year after the amount was established. From that point on he estimated the additional amount due and paid this amount each month. This was adjusted each year after the November assessment was received. He claims that after 1976 he never received any notice of the increase in taxes. In any event, he claimed that he assumed that the property taxes were being paid by MHC. He admitted that the full amount of rent was not paid, but felt he was not responsible for it because he was given no notice of the amount of the increase.

Defendant has failed to establish payment of the amount in question. Under the lease, he is obligated to pay any property taxes over $1,200. Plaintiff has produced evidence of the amount owed. Under such circumstances, the only question presented to us in this case is whether plaintiffs are in some way estopped or have waived their right to receive the full amount of rent by accepting the lesser amount and failing to give defendant notice of any increased amounts due.

■    *Waiver* is the intentional relinquishment of a known right. *Waterways Terminals v. P. S. Lord,* 242 Or 1, 26, 406 P2d 556 (1965). There is no evidence in this case that plaintiffs intended to relinquish their right to receive the full amount of the rent.

[48]

■    *Estoppel by conduct,* on the other hand, does not require proof of intent. *Schmeck v. Bogatay,* 259 Or 188, 197, 485 P2d 1095 (1971). In *Schmeck,* the plaintiff sought payment of additional rent due under a lease provision which increased the monthly rental payments upon the occurrence of certain conditions. The question was whether plaintiff was estopped from claiming the increased amount by their continual acceptance of the lesser amount. The court concluded that they were not. The plaintiffs in that case had communicated their intention to enforce the lease provision to the defendant. In addition, the court noted that there was no proof that the defendant did, in fact,

> "rely on plaintiffs' conduct and was misled to his prejudice by such conduct into either doing or refraining from doing anything that he would not otherwise have done or refrained from doing." *Ibid.* at 199.

■    Having pled estoppel as an affirmative defense, defendant had the burden to prove each element of that defense. *Shaw v. Northwest Truck Repair,* 273 Or 452, 457, 541 P2d 1277 (1975). Estoppel requires reasonable reliance on the part of the party claiming its protection. In *Willis v. Stager,* 257 Or 608, 619, 481 P2d 78 (1971), the court stated:

> "As for estoppel, it is well established that there can be no estoppel unless there was not only reliance, but a right of reliance and that reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon." *See also Community Bank v. Jones,* 278 Or 647, 673, 566 P2d 470 (1977).

Moreover, the doctrine only protects those who materially change their position in reliance upon another's acts or representations. *Bash v. Fir Grove Cemeteries Co.,* 282 Or 677, 687, 581 P2d 75 (1978).

■    Defendant here was aware of the lease provision requiring him to pay, as additional rent, the property taxes over $1,200. He admitted that he knew that the taxes would increase each year. It is true that

plaintiffs never informed him of the amount of the increase, but there is no charge of or proof of an intentional misrepresentation of fact, and defendant had knowledge of the fact of an increase. Even if defendant was ignorant of the exact amount due, his defense fails. There is no proof that he was prejudiced by plaintiffs' actions "into either doing or refraining from doing anything that he would not otherwise have done or refrained from doing." *Schmeck v. Bogatay, supra,* 259 Or 199. Defendant is liable to plaintiff for unpaid property taxes for the years 1976-77 and 1977-78 in the amount of $1,636.78.

The last issue is whether plaintiffs are entitled to termination of the lease because of non-payment of the rent.[5] The lease provides that the rent is due on the first day of each month and that default occurs when the rent is not paid within ten days after it is due. The lessor may terminate the lease in the event of default by written notice within 30 days of the grace period for default.

■ ■ Plaintiffs rely upon ORS 91.090.[6] However, that statute is applicable only where there is no contrary provision in the lease in question. *Moore et ux v. Richfield Oil Corp.,* 233 Or 39, 43-44, 377 P2d 32 (1962). In this case, the lease requires notice prior to termination of the lease. Plaintiffs did not give defendant any notice of default and their intention to terminate: they cannot now claim to have terminated the lease.

---

[5] The trial court found that plaintiffs consented to the sublease and declined to terminate the lease on that basis. On appeal, plaintiffs fail to challenge this finding, the only ground asserted for termination of the lease is non-payment of the rent.

[6] ORS 91.090 provides:

"The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

The judgment of the trial court as to money owed is reversed. Defendant is liable to plaintiffs for past due rent in the amount of $2,666.78.[7] Plaintiffs are not entitled to a decree terminating the lease because they failed to give defendant notice of their intention to terminate.

Affirmed in part; reversed in part.

---

[7] This amount reflects past due rent of $515 a month for two months calculated at the rate rent was being paid and $1,636.78 for rent to cover the increased property taxes. The $1,030 for two months rent does not reflect the increased amount for property taxes.