968 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BIOMASS ONE, L.P., a Delaware limited partnership, Plaintiff-Appellant,
v.
IMPERIAL CASUALTY AND INDEMNITY COMPANY, a Nebraska
corporation, Defendant-Appellee.
 No. 91-35197.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 7, 1992.
Decided July 20, 1992.
 
 Before GOODWIN, TANG and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Imperial Casualty and Indemnity Company ("Imperial") issued a professional liability insurance policy to S-P Construction ("S-P"). The policy contained a $2,000,000 limit of liability. The insurance policy covered S-P's design and construction of a generating facility for Biomass One ("Biomass"). Biomass subsequently sued S-P in Oregon state court for negligence in its work on the project. Pursuant to the provisions of the insurance policy, S-P tendered defense of the state court action to Imperial. Imperial accepted the tender and paid nearly $1.9 million in attorney's fees and costs to defend S-P. Biomass and S-P eventually settled the state court action, with S-P assigning its rights to collect under the Imperial policy to Biomass. Biomass then sued Imperial in federal district court for breach of the insurance contract. The magistrate judge recommended that summary judgment be granted in favor of Biomass. The district court disagreed and granted summary judgment instead for Imperial. Biomass appeals. We reverse and remand for a calculation of attorney's fees.
 
 DISCUSSION
 I. Contract Ambiguity
 
 3
 Biomass argues that the district court wrongly concluded that the policy explicitly states that defense costs will be offset against the policy limit. Biomass insists that no such clear enunciation of the policy terms exists. At best, Biomass concludes, the policy's language is ambiguous and the ambiguity should be resolved against the insurance company. We agree and therefore reverse the district court's grant of summary judgment for Imperial.
 
 
 4
 Under Oregon law, the insured must be given "specific and unequivocal notice" of insurance policy provisions that serve to reduce or forfeit coverage. See Insurance Co. of N.Am. v. Howard, 679 F.2d 147, 149 (9th Cir.1982) (applying Oregon law). If the policy language is ambiguous and reasonably subject to differing interpretations, any reasonable doubt must be resolved in favor of the insured and against the insurance company. Id. at 149 n. 2; Allen v. Continental Casualty Co., 572 P.2d 617, 617 (Or.1977); Jones v. Insurance Co. of N.Am., 504 P.2d 130, 133 (Or.1972); School Dist. No. 1 v. Mission Ins. Co., 650 P.2d 929, 933 (Or.Ct.App.1982), review denied, 662 P.2d 725 (Or.1983). That rule applies with even greater force when, as here, the ambiguity appears in a policy provision purporting to limit the policy's coverage. See Howard, 679 F.2d at 150.
 
 
 5
 No single sentence in the Imperial policy unambiguously states that defense costs shall be counted in determining when the policy limit is exhausted. Instead, the parties confront us with competing interpretations of a variety of the policy's provisions.
 
 
 6
 At the center of the dispute is the third clause of Item 6, which appears on the face of the policy. Item 6 reads in its entirety:
 
 Limit of Liability and Deductible:
 
 7
 The liability of the Company for "each claim" which is first
 
 
 8
 made during the Policy period shall not exceed .............. $2,000,000.
 
 
 
 and, subject to that limit for each claim, the total of the
 Company's liability for all claims first made during the
 Policy period shall not exceed in the "aggregate" ........... $2,000,000.
 
 
 
 9
 The limit of liability afforded under the Policy shall be
 
 
 10
 subject to the deductible amount (set forth below) which
 
 
 11
 shall be applicable to "each claim" and shall be inclusive
 
 
 12
 of "costs, charges and expenses" ............................. 100,000.
 
 
 
 The reference in clause three of Item 6 to "costs, charges and expenses" can fairly be construed in two different ways. The language could mean, as the district court thought, that the "limit of liability ... shall be inclusive of 'costs, charges and expenses.' " But it is equally plausible that the costs language simply represents the second half of the dependent clause defining "deductible amount."
 Indeed, the latter interpretation is more consistent with grammatical rules governing sentence structure. The heading "Limit of Liability and Deductible" alerts the insured that both topics will be addressed in Item 6. The first clause concededly speaks to the limit of liability. The second clause, introduced by "and," continues and elaborates on the first. The third clause appears to mark a break. Rather than a conjunction, the third clause opens a new sentence, indicating that the subject matter is shifting to the second topic heading--the deductible. Furthermore, the location of the costs language at the tail end of a dependent clause suggests that the phrase refers to the object of the clause--the deductible--rather than the distant subject of the sentence.
 Other parts of the policy support Biomass's contention that the costs language refers to the deductible, rather than to the limit of liability. Section V of the policy is dedicated to defining the deductible. In the course of the discussion, the policy reconfirms that "costs, charges and expenses" are part of the deductible:
 The deductible amount stated in the Declarations as applicable to "each claim" ... will apply to any sum or sums paid by [Imperial] as "damages" (inclusive of "costs, charges and expenses"), whether or not loss payment is made.
 "Deductible" and the costs language again appear in tandem in section VII(c), which refers to the insured's duty "to pay his deductible as set forth in paragraph V hereof (which includes an obligation to pay loss payments and 'costs, charges and expenses')."
 By contrast, the section of the insurance contract devoted to a discussion of the limit of liability (section IV) never once mentions defense "costs," "charges," or "expenses." Given Imperial's obligation to give "specific and unequivocal notice" of factors diminishing liability, Howard, 679 F.2d at 149, the policy's omission of any reference to defense costs in section IV strongly suggests that the limit on liability does not encompass such expenses.
 Section VII(a)'s statement that "judgments or settlements," but apparently not "costs, charges or expenses," will exhaust Imperial's liability further reinforces a reading of the policy that dichotomizes defense costs and the limit on liability.
 Moreover, considering defense costs separate and apart from the limit on liability for claims is consistent with the type of insurance contract at issue here. The Imperial policy comprises both a duty to defend and a duty to indemnify. The duty to defend obliges Imperial to bear the "costs, charges and expenses" of S-P's state court litigation. Through the duty to indemnify, on the other hand, Imperial undertakes to pay "judgments or settlements" in cases arising from a covered liability. Under Oregon law, the duty to defend and the duty to indemnify are separate and distinct matters. Paxton-Mitchell Co. v. Royal Indem. Co., 569 P.2d 581, 583 (Or.1977). The duty to defend is broader than the duty to indemnify. See Ferguson v. Birmingham Fire Ins. Co., 460 P.2d 342, 347 (Or.1969).
 Although the insurance contract ties the liability limit to "claims," no definition of "claim" is offered. "Claim," however, often appears in the disjunctive with "costs, charges or expenses," suggesting that the two refer to distinctly different aspects of the policy's coverage. See, e.g., Exclusions (a) ("The insuring Agreements and all other provisions of this insurance shall not apply to claims or 'costs, charges and expenses' for or arising out of" certain excluded activities) (emphasis added); Section VII(b) (referring to Imperial's obligation to pay a "claim ... plus 'costs, charges and expenses' ") (emphasis added); Endorsement # 5 (stating that policy shall not apply to certain "claims or 'costs, charges and expenses' ") (emphasis added).
 Treating "claim" as referring to the duty to indemnify and the costs language as referencing the duty to defend explains why the two terms are frequently juxtaposed in the contract. Only by listing both does a provision refer to the entire protection--defense and indemnification--offered by the policy. To argue as Imperial does, on the other hand, that "claim" encompasses "costs" so that the $2,000,000 limit per claim includes defense costs, renders redundant certain portions of the policy's language.
 We also note that Imperial drafted the language at issue. To the extent confusion or ambiguity results, the consequences of the contract's inexactitude must be borne by the drafter. Jones, 504 P.2d at 133. Finally, that two judges have already reached diametrically opposed conclusions from reading the same contract language is a "strong indication[ ]" of ambiguity and further informs our decision. Id.
 Of course, we need not definitively decide what the proper construction of the policy is. We need only decide if the policy is ambiguous or if it is, instead, "specific and unequivocal" with respect to whether defense costs will be offset against the liability limit attaching to "claims." Because we conclude that the policy language admits of a reasonable doubt, that doubt must be resolved in favor of Biomass. See id. at 132-33 (ambiguity in insurance contract language over antecedent of "therein," for purpose of interpreting an exclusion from coverage, must be interpreted in favor of the insured); Govans v. Northwestern Pac. Indem. Co., 489 P.2d 947, 948 (Or.1971) (dispute over whether contract language should be read narrowly or broadly must be decided in manner that favors coverage); cf. Planet Ins. Co. v. Mead Reinsurance Corp., 789 F.2d 668, 672-73 (9th Cir.1986) (applying Arizona law, court holds that "ultimate net loss" limit in policy does not include defense expenditures).[1]
 II. Estoppel and Waiver
 Imperial argues that, if we reverse the district court's decision on the clarity of the liability limit language, we should nonetheless remand for trial on its affirmative defenses of estoppel and waiver. We disagree. Because the predicate facts are not in dispute, we may decide as a matter of law whether Imperial has introduced facts supporting a finding of either estoppel or waiver. See Sawyer v. Sonoma County, 719 F.2d 1001, 1006 n. 12 (9th Cir.1983) (when facts are not in dispute, estoppel is a question of law). We hold that Imperial has failed in this task.
 Imperial argues that it first notified S-P in August 1987 that it believed that defense costs reduced the policy limit. Biomass did not respond to Imperial's assertion. Imperial's notice, however, consisted of a single sentence buried at the end of a two-page letter discussing a different topic all together. The next time Imperial broached the subject of defense expenditures diminishing the liability limit, S-P responded in writing, reserving its right to contest Imperial's characterization of the policy. S-P repeated this position every time Imperial reasserted its theory.
 With respect to estoppel, Oregon law requires Imperial to demonstrate that (1) Biomass is responsible for a false representation or misleading silence, (2) Biomass made the misrepresentation with knowledge of the true facts, (3) Imperial was ignorant of the truth, (4) Biomass intended for Imperial to act upon the misrepresentation, and (5) Imperial detrimentally relied on the misrepresentation. See Coos County v. State, 734 P.2d 1348, 1354 (Or.1987). The detrimental reliance must have occasioned a material change in Imperial's position. Kahl v. Pool, 613 P.2d 1078, 1082 (Or.Ct.App.1980).
 The facts introduced by Imperial fail to make out a claim of estoppel. Imperial has not evidenced a misleading silence. To the contrary, S-P repeatedly asserted its reservation of rights regarding the interpretation of the contract's liability limit. That S-P did not respond to Imperial's August 1987 comment is understandable, given how subtly the assertion concerning the liability limit was made.
 Furthermore, Imperial has introduced no evidence that it detrimentally relied on S-P's initial silence. Imperial has neither indicated how the short-term silence caused it materially to change its position nor described what harm it suffered at S-P's hands.
 Imperial has likewise failed to introduce evidence that would support a finding of waiver. Waiver is "the intentional relinquishment of a known right." Kahl, 613 P.2d at 1081; see also Waterway Terminals Co. v. P.S. Lord Mechanical Contractors, 406 P.2d 556, 567 (Or.1965). Imperial cites no evidence at all indicating that S-P consciously intended to waive its right to contest the liability limit. In fact, the evidence reveals that S-P repeatedly objected to Imperial's interpretation of the policy. Moreover, under Oregon law, parties may not waive material terms of a contract. Burness v. Bruce, 776 P.2d 32, 34 (Or.Ct.App.1989).
 In sum, Imperial has failed to create a genuine issue of material fact concerning the existence of either estoppel or waiver. We therefore hold that Biomass is entitled to prevail as a matter of law, given the ambiguity in the policy language and Imperial's lack of any affirmative defense.
 III. Attorney's Fees
 Biomass seeks attorney's fees on appeal. Oregon law provides:
 If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.
 Or.Rev.Stat. 742.061 (emphasis added).
 Pursuant to 742.061's mandatory directive, Biomass is entitled to attorney's fees in this litigation. We remand this case to the district court for calculation of the fees.
 REVERSED AND REMANDED.
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Oregon law sometimes permits consideration of extrinsic evidence of the parties' intent to resolve an ambiguity. Remand for consideration of such evidence here, however, would be inappropriate. The case is at the summary judgment stage. Imperial's evidence on the parties' intent speaks only to its own mindset and does not demonstrate that S-P ever intended for the policy limit to include defense costs. Imperial has thus failed to create a genuine issue of material fact concerning the parties' joint contractual intent